UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

DIANE LEWIS,                                                    20-cv-1148 (GHW) (DCF)

             Plaintiff,

                                      SECOND AMENDED COMPLAINT

        -against-                                              PLAINTIFF DEMANDS
                                                                TRIAL BY JURY
NUTRACEUTICAL WELLNESS, INC.,

             Defendant.

---------------------------------------------------------x


       Plaintiff Diane Lewis, by her attorneys, Lichten & Bright, P.C., alleges for her first

amended complaint against defendant Nutraceutical Wellness, Inc. as follows:


INTRODUCTION

       1.      Plaintiff brings this action to seek relief for sex and pregnancy discrimination in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the

New York State Human Rights Law, N.Y. Executive Law §*et seq.*, and the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("City Human Rights Law").

       2.      Plaintiff is a former employee of defendant who was employed by defendant

as a marketing director from on or about April 22, 2019 until she was terminated on or about

September 13, 2019.

       3.      At the time of her termination, plaintiff was visibly pregnant.

       4.      At the time of her termination, members of defendant's senior management who

participated in company personnel decisions, including decisions to terminate employees (including the decision to terminate plaintiff), were aware of the fact that plaintiff was or appeared to be pregnant.

5.    At all relevant times, plaintiff was qualified for her position and her job performance was good or better than good and considered to be good or better than good by her supervisors, including her supervisor at the time of her termination, Rachel Wright.

6.    After her termination, plaintiff's job duties and responsibilities were transferred to other employees who were not pregnant and did not appear to be pregnant, including, specifically, Evie Hughes, who was given most or all of plaintiff's duties and responsibilities.


JURISDICTION AND VENUE

7.    Jurisdiction of this Court exists over the Title VII claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).  Supplemental jurisdiction exists over New York State and New York City Human Rights Laws claims pursuant to 28 U.S.C. § 1367(a).

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2).  The defendant resides in this District and a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this District.

9.    Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 21, 2019.  A copy of the EEOC charge is annexed as Exhibit 1 to this complaint.

10.    On December 4, 2019, the EEOC issued a Notice of Right to Sue to plaintiff in connection with her charge of discrimination.  A copy of the Notice of Right to Sue is annexed as

Exhibit 2 to this complaint.

11.     A copy of the original complaint was served upon the New York City Commission on Human Rights and Corporation Counsel, pursuant to N.Y.C. Admin. Code § 8-502(c).

## PARTIES

12.     Lewis was employed by defendant from on or about April 22, 2019 until her termination on or around September 13, 2019.  During the time she was employed by defendant, she was known by her maiden name, Diane Zundel.  She currently uses her married name, Diane Lewis.  She currently resides in Brooklyn, New York.

13.     Defendant Nutraceutical Wellness, Inc. is a Delaware corporation authorized to do business in New York with its principal place of business located at 136 Madison Avenue, 10th floor, New York, NY 10016.  Defendant does business under the trade, brand or "Doing Business As" name of Nutrafol.

14.     At all times relevant to this action, defendant was plaintiff's employer within the meaning of Title VII, the New York State Human Rights Law and the New York City Human Rights Law.

15.     Defendant has approximately one hundred employees.

## FACTS

16.     Plaintiff began working for defendant on or about April 22, 2019 as a marketing director (Head of Professional Marketing).

17.     On or about September 13, 2019, plaintiff was terminated by defendant.

18.     At the time of her termination, plaintiff was approximately ten weeks pregnant and the fact that plaintiff – who normally and previously had a very thin and athletic build – was pregnant was already plainly visible.

19.     On the day plaintiff was terminated, Sophia Kogan, M.D., who is a senior manager of the defendant, defendant's Chief Medical Officer, and one of defendant's three co-founders, text messaged plaintiff.  In her text message to plaintiff, Dr. Kogan stated that she "heard that" plaintiff's termination was "very bad timing and [she] actually had a feeling [plaintiff was pregnant] and was going to ask" her about it.

20.     Sophia Kogan holds a medical degree and is a physician.

21.     As a medical doctor, Sophia Kogan is more educated and trained, and more observant of and perceptive, with respect to people's physical condition and health condition and changes in people's bodies and body shape, changes in weight and other physical and behavioral characteristics, features and changes in people, including with respect to whether a woman is or may be pregnant, than are most people and this is especially true in comparison to people who do not have medical training and are not physicians.

22.     At or around the time of plaintiff's termination, Dr. Kogan told one or more employees of defendant, including but not limited to Michelle Aselta, that plaintiff appeared to her to be pregnant.

23.     Approximately one or two weeks prior to her termination, plaintiff presented a slide show on merchandising display ideas at a meeting of defendant's marketing staff, including Sabina Rahaman, Carissa LaGala, Evie Hughes, Rachel Wright, Johnnie Stephens, Sophia Kogan

and another employee with the first name of Johnnell (and whose last name is possibly Nidoh).

While scrolling through the images she was presenting to her colleagues, a picture of the offices

of plaintiff's obstetrician's office (identified as an OB/GYN office) was displayed on the screen

during this presentation.  Plaintiff then skipped to the next picture and a picture that plaintiff had

taken of two home pregnancy test devices, each indicating a "positive" result, inadvertently

displayed on the screen.  Plaintiff panicked and instead of jumping to the next slide of her

presentation, she inadvertently jumped back to the picture of her obstetrician's office.  Copies of

the two pictures or images that appeared during this presentation are attached to this amended

complaint as Exhibits 1 and 2.

24.     Neither at the time of her termination nor prior thereto was plaintiff ever told by

any manager, executive or any other person working for defendant, including any of the

company's co-founders, that her performance was poor or unsatisfactory or needed improvement.

To the contrary, the feedback plaintiff received from her hiring manager, John Nippler, and her

direct manager, Rachel Wright, regarding her performance prior to the date of her termination

was consistently positive and she also received positive feedback about her proposed projects and

marketing plans from each of defendant's three co-founders (Giorgos Tsetis, Sophie Kogan and

Roland Peralta), including, for example, when Mr. Peralta told plaintiff that he loved her six

month marketing plan (which he told her in or around early August of 2019).

25.     Plaintiff's direct manager, Rachel Wright (defendant's Head of Brand Marketing),

expressed shock and surprise when she found out plaintiff had been terminated, texting her on

September 13, 2019 that her termination was "beyond comprehension" and made her "question

everything."

26.     The usual practice at Nutraceutical Wellness, Inc. when making a decision to hire an employee is (and at the time of plaintiff's termination, was) to consult with the employee's direct supervisor or manager before the decision to terminate the employee is made, with the final decision being made by the company's three co-founders.

27.     Plaintiff's direct supervisor or manager at the time of her termination was Rachel Wright. Ms. Wright was not consulted about the decision to terminate plaintiff and did not know prior to the decision being made that it was being considered by the co-founders, although Ms. Wright was consulted by them (including during the approximately two or three week period prior to plaintiff's termination) regarding possible future terminations of other employees on the company's marketing teams that Ms. Wright supervised. During these discussions of possible terminations of marketing team members, plaintiff's name never came up, although the names of other team members who were being considered for termination were mentioned to Ms. Wright by the co-founders.

28.     Plaintiff's direct supervisor, Rachel Wright, was not told why plaintiff had been terminated, either prior to plaintiff's termination, at the time of plaintiff's termination, or subsequent to plaintiff's termination. On the day plaintiff was terminated, Ms. Wright was called into a meeting with defendant's human resources director, Steven Thede, and John Nippler (defendant's then-head or president of sales and General Manager), and told that plaintiff had just been terminated and that Ms. Wright should inform her team (*i.e.,* the company's marketing staff) because members of the team would be upset (because plaintiff was liked by her colleagues). Ms. Wright asked them why plaintiff was terminated but was not given a reason and, instead, was merely instructed to inform the marketing team that plaintiff had been

terminated.

29.     Approximately two weeks prior to her termination, plaintiff told a co-worker, Michelle Asleta, that she was pregnant.

30.     All decisions to terminate an employee of defendant were approved by CEO and co-founder Giorgo Tsetis.  As Mr. Tsetis boasts on defendant's website, "Giorgos is a world-renowned model."  (https://nutrafol.com/story/)

31.     As a world-renowned model, with years of experience, prominence and success in the modeling industry, Mr. Tsetis is more observant of, more sensitive to, and more perceptive regarding people's bodies, body shape, weight, changes in weight and changes in body shape, than are most other people, and this is especially true in comparison to people who do not have Mr. Tsetis's level of training, experience, renown and success in the modeling industry.

32.     Giorgos Tsetis, together with the defendant's two other co-founders (Sophia Kogan and Roland Peralta), made, participated in and/or approved of the decision to terminate plaintiff.

33.     At the time that Giorgos Tsetis terminated plaintiff, he had noticed that she had an expanding belly and appeared to be pregnant.

34.     Prior to making the decision to terminate plaintiff, Giorgos Tsetis had never expressed disapproval of plaintiff's job performance to plaintiff, to plaintiff's direct supervisors, or to Sophia Kogan.

35.     Prior to the decision to terminate plaintiff, Giorgos Tsetis had never expressed disapproval of plaintiff's job performance to anyone who participated in the decision to terminate plaintiff.

36.     On or about November 26, 2019, the New York State Department of Labor's

Unemployment Insurance Division sent a notice to defendant, regarding plaintiff's application

for unemployment insurance benefits, that stated:

> Determination: The claimant is eligible for benefits under Section
> 593.3 of the Unemployment Insurance Law.
>
> Reason: You discharged the claimant on or about 09/13/2019.
> While you state she did not perform up to company standards,
> there is insufficient evidence she intentionally committed an act
> harmful to your interests.  There is insufficient evidence she
> intentionally disregarded any policy, procedure, or instruction.

37.     After her termination, most or all of plaintiff's work responsibilities and duties

were transferred to another employee of defendant, Evie Hughes, who was not pregnant at the

time and did not appear to be pregnant and was promoted to assume plaintiff's responsibilities.

38.     Plaintiff was told she was terminated at a meeting with defendant's head of

human resources, Steven Thede, and John Nippler (the General Manager of defendant who

functioned as the president or head of sales and who was responsible, along with Rachel Wright,

for evaluating plaintiff's performance) on or about Friday September 13, 2019.  During this

meeting, Steven Thede told plaintiff she was not being terminated for performance reasons and

when plaintiff told him she was pregnant, he neither displayed nor expressed any surprise.  John

Nippler barely spoke, if at all, during this meeting and appeared to be upset.

39.     John Nippler had no knowledge that plaintiff was going to be terminated prior to

September 13, 2020, when he was instructed to inform plaintiff she was terminated.  Mr. Nippler

was not told why plaintiff was being terminated.

40.     Defendant regularly had events or meetings at which employees were expected to

8

attend and where drinking alcohol was central to the event.  Prior to learning she was pregnant, plaintiff, along with most or all of the others who were present (including defendant's co-founders, including Giorgos Tsetis), drank alcohol.  During the period she knew she was pregnant, plaintiff did not drink alcohol at these events and was the only person who appeared not to be drinking, which was conspicuous and noticed by management, which encouraged employees to drink at these events.  Giorgos Tsetis and Sophia Kogan were present at at least one of these events at the company's offices during the time that plaintiff did not drink because she was pregnant.  At this event, which took place on or about September 6, 2019, Dr. Kogan and Giorgos Tsetis invited plaintiff to go out on the balcony to smoke cigarettes with them.  Plaintiff responded that she "couldn't" do that and declined their invitation to smoke.  By the time they asked her to smoke cigarettes with them, very few people were still there and plaintiff's non-drinking was highly conspicuous and noticed by them.

41.    Plaintiff was terminated because she was pregnant and/or because defendant suspected or believed she was pregnant and because she is a woman.

42.    The persons who made the decision to terminate plaintiff would not have terminated a man for having an expanding belly, would not have suspected or believed that a man with an expanding belly was pregnant and would not have treated the male employee as if he were pregnant.

43.    The decision to terminate plaintiff because she was pregnant and/or because defendant suspected or believed she was pregnant was made with willful, malicious or reckless disregard of her statutorily protected rights not to be discriminated against on account of her gender or pregnancy.

## FIRST CAUSE OF ACTION

44.     Defendant terminated plaintiff because of her sex and because she was pregnant and/or because defendant suspected or believed she was pregnant, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

45.     As a result of defendant's discriminatory conduct, plaintiff has suffered and will continue to suffer monetary damages, mental anguish and humiliation.

46.     Defendant engaged in these discriminatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.

## SECOND CAUSE OF ACTION

47.     Defendant terminated plaintiff because of her sex and because she was pregnant and/or because defendant suspected or believed she was pregnant, in violation of the New York State Human Rights Law, N.Y. Executive Law § 296(1).

48.     As a result of defendant's discriminatory conduct, plaintiff has suffered and will continue to suffer monetary damages, mental anguish and humiliation.

49.     Defendant engaged in these discriminatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.

## THIRD CAUSE OF ACTION

50.     Defendant terminated plaintiff because of her sex and because she was pregnant and/or because defendant suspected or believed she was pregnant, in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1).

10

51.     As a result of defendant's discriminatory conduct, plaintiff has suffered and will continue to suffer monetary damages, mental anguish and humiliation.

52.     Defendant engaged in these discriminatory practices willfully, maliciously and with reckless indifference to plaintiff's statutorily protected rights.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a)     awarding compensatory damages in an amount not yet ascertained, on each cause of action, including economic damages and damages for mental anguish and humiliation;

(b)     awarding punitive damages in an amount not yet ascertained, on the Title VII and New York City Human Rights Law causes of action;

(c)     awarding all other make-whole relief available under the relevant statutes, including back pay and benefits, and front pay, on each cause of action;

(d)     declaring that the acts and practices complained of are in violation of Title VII, the New York State Human Rights Law and the New York City Human Rights Law;

(e)     awarding plaintiff reasonable attorney's fees and the costs of this action, on each cause of action; and

(f)     granting such other and further relief as this Court deems just and proper.


DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all of the causes of action herein.

Dated: May 21, 2020

LICHTEN & BRIGHT, P.C.

By: _____

Daniel R. Bright (DB 9373)
387 Park Avenue South, 5th Floor
New York, New York 10016
(646) 588-4871
Attorneys for Plaintiff Diane Lewis